[No. C068800. Third Dist. Feb. 6, 2013.]

JASON BROWNE et al., Plaintiffs and Appellants, v.
COUNTY OF TEHAMA et al., Defendants and Respondents.

706

COUNSEL

Law Office of J. David Nick, J. David Nick; Law Office of E.D. Lerman and Editte D. Lerman for Plaintiffs and Appellants.

Arthur J. Wylene and Alan B. Cox for Defendants and Respondents.

OPINION

**DUARTE, J.**—In recent years, there has been considerable litigation over the regulation, and in some cases the outright ban, of medical marijuana dispensaries. (See, e.g., *City of Riverside v. Inland Empire Patient's Health & Wellness Center, Inc.* (2011) 200 Cal.App.4th 885 [133 Cal.Rptr.3d 363], review granted Jan. 18, 2012, S198638, 136 Cal.Rptr.3d 667, 268 P.3d 1065; *City of Lake Forest v. Evergreen Holistic Collective* (2012) 203 Cal.App.4th 1413 [138 Cal.Rptr.3d 332], review granted May 16, 2012, S201454, 140 Cal.Rptr.3d 795, 275 P.3d 1266.) This case, which comes from a rural county, involves the county's attempt to regulate the *cultivation* of medical marijuana rather than its distribution.

In response to concerns about the unregulated cultivation of marijuana in Tehama County, the Board of Supervisors of Tehama County passed ordinance No. 1936 regulating marijuana cultivation (the Ordinance). Petitioners,

a group of individuals who use medical marijuana and are "qualified patients,"[1] petitioned for a writ of mandate or prohibition "to set aside and withdraw and rescind" the Ordinance. They asserted the Ordinance was unconstitutional on its face because it conflicted with the Compassionate Use Act of 1996 and the Medical Marijuana Program and invaded their right to privacy. The petition sought a judicial declaration that the Ordinance was unconstitutional.

Defendants, the County of Tehama, the County's board of supervisors, and entities sued as "the Tehama County Department of Planning, Building and Code Enforcement" (hereafter collectively the County), demurred, contending the petition did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer without leave to amend and dismissed the petition.

Petitioners appeal. They contend the trial court abused its discretion in sustaining the demurrer. They contend the Ordinance is unconstitutional because it impermissibly amends the Compassionate Use Act of 1996 and conflicts with the Medical Marijuana Program by imposing restrictions, and in some cases a ban, on the right to cultivate marijuana for medical purposes.

As we explain, the premise of petitioners' argument is flawed. Neither the Compassionate Use Act of 1996 nor the Medical Marijuana Program grants petitioners, or anyone for that matter, an *unfettered* right to cultivate marijuana for medical purposes. Accordingly, the regulation of cultivation of medical marijuana does not conflict with either statute. Further, petitioners' argument that the Ordinance constitutes a complete ban on cultivating medical marijuana for certain individuals fails. Nothing in the Ordinance bans the cultivation of medical marijuana outright. Petitioners raise a facial challenge to the Ordinance and have failed to plead that its provisions ban cultivation of medical marijuana in all or most circumstances. Accordingly, we shall affirm the judgment.

## STATUTORY AND PROCEDURAL BACKGROUND

### The Compassionate Use Act of 1996

In 1996, California voters adopted Proposition 215, the Compassionate Use Act of 1996 (CUA) (Health & Saf. Code, § 11362.5).[2] The CUA is intended to "ensure that seriously ill Californians have the right to obtain and use

---

[1] A "qualified patient" is one who is entitled to the protections of the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5), but who does not have an identification card under the Medical Marijuana Program (Health & Saf. Code, § 11362.71, subd. (f)).

[2] Further undesignated statutory references are to the Health and Safety Code.

marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana . . . "; "ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction"; and "encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (§ 11362.5, subd. (b)(1)(A)–(C).)

■ Rather than granting a blanket right to use marijuana for medical purposes, the CUA only *immunizes* specific persons from prosecution under two sections of the Health and Safety Code. Thus, the CUA grants only "a limited immunity from prosecution." (*People v. Mower* (2002) 28 Cal.4th 457, 470 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) The CUA provides: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).) Thus, the CUA creates a limited defense to certain crimes, "not a constitutional right to obtain marijuana." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 774 [33 Cal.Rptr.3d 859] (*Urziceanu*).)

■ Despite the language of the findings and declarations evincing an intent to " 'ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes,' " the CUA did not create "a broad right to use marijuana without hindrance or inconvenience." (*Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 928 [70 Cal.Rptr.3d 382, 174 P.3d 200] (*Ross*).) "To the contrary, the only 'right' to obtain and use marijuana created by the Compassionate Use Act is the right of 'a patient, or . . . a patient's primary caregiver, [to] possess[] or cultivate[] marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician' without thereby becoming subject to punishment under sections 11357 and 11358 of the Health and Safety Code." (*Ross, supra,* 42 Cal.4th at p. 929.)

Significantly, the CUA also provides that, "[n]othing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes." (§ 11362.5, subd. (b)(2).)

*The Medical Marijuana Program*

In 2003, the Legislature passed the Medical Marijuana Program (MMP) (§ 11362.7 et seq.). The Legislature passed the MMP, in part, to clarify the scope of the CUA and promote its uniform application "among the counties within the state." (Stats. 2003, ch. 875, § 1, p. 6422.) The MMP created a voluntary program for the issuance of identification cards to qualified patients and primary caregivers. (§ 11362.71.)

■ The MMP also "immunizes from prosecution a range of conduct ancillary to the provision of medical marijuana to qualified patients. [Citation.]" (*People v. Mentch* (2008) 45 Cal.4th 274, 290 [85 Cal.Rptr.3d 480, 195 P.3d 1061] (*Mentch*).) "Section 11362.765 accords qualified patients, primary caregivers, and holders of valid identification cards, an affirmative defense to certain enumerated penal sanctions that would otherwise apply to transporting, processing, administering, or giving away marijuana to qualified persons for medical use." (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1171 [100 Cal.Rptr.3d 1] (*Kruse*).) The MMP provides that specified individuals "shall not be subject, *on that sole basis*, to criminal liability" under sections 11357 (possession), 11358 (cultivation), 11359 (possession for sale), 11360 (transportation), 11366 (maintaining location for selling, giving away or using controlled substances), 11366.5 (managing location for manufacture or storage of controlled substance), or 11570 ("drug den" abatement law). (§ 11362.765, subd. (a), italics added.) This immunity extends to those "who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes." (§ 11362.775.) The MMP does not, however, "confer on qualified patients and their caregivers the unfettered right to cultivate or dispense marijuana anywhere they choose." (*County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 869 [121 Cal.Rptr.3d 722] (*Hill*).)

■ While the MMP recognizes, by granting limited immunity, the establishment of collectives for the cultivation of medical marijuana, a 2010 amendment to the MMP restricts the location of medical marijuana cooperatives, collectives or dispensaries to more than 600 feet from a school and permits a city or county to adopt ordinances to further restrict the location and establishment of such cooperatives, collectives or dispensaries. (§ 11362.768, subds. (b), (f) & (g).)

The MMP specifies the maximum amount of marijuana a patient or caregiver may legally possess or cultivate for personal medical use (no more than eight ounces of dried marijuana or more than six mature or 12 immature marijuana plants per qualified patient), authorizes physicians to prescribe

greater amounts in certain instances, and authorizes cities and counties to establish guidelines that exceed the specified base amounts.[3] (§ 11362.77, subds. (a), (b) & (c).)

Significantly, the MMP provides that it does not "prevent a city or other local governing body from adopting and enforcing" "laws consistent with this article." (§ 11362.83, subd. (c).) A very recent amendment of the MMP, Assembly Bill No. 1300 (2011–2012 Reg. Sess.), expressly permits adoption and enforcement of "local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective." (§ 11362.83, subds. (a) & (b).)

*The Ordinance*

In response to citizen concerns, the County enacted the Ordinance "to establish reasonable regulations upon the manner in which marijuana may be cultivated, including restrictions on the amount of marijuana that may be individually, collectively, or cooperatively cultivated in any location or premises, in order to protect the public health, safety, and welfare in Tehama County." (Tehama County Code (TCC), § 9.06.020, subd. (J).) The findings supporting the Ordinance note that, "Comprehensive civil regulation of premises used for marijuana cultivation is proper and necessary to avoid the risks of criminal activity, degradation of the natural environment, malodorous smells, and indoor electrical fire hazards . . . ." (TCC, § 9.06.020, subd. (G).)

The Ordinance declares it a nuisance to cultivate more than a certain number of plants depending on the size of the premises.[4] The Ordinance also declares it a nuisance to cultivate any amount of marijuana within 1,000 feet of any school, school bus stop, school evacuation site, church, park, childcare center, or youth-oriented facility. (TCC, § 9.06.040, subd. B.)

---

[3] In *People v. Kelly* (2010) 47 Cal.4th 1008, 1043 [103 Cal.Rptr.3d 733, 222 P.3d 186] (*Kelly*), our Supreme Court held that to the extent section 11362.77's specific quantitative limitations for marijuana possession and cultivation by qualified patients and their caregivers burdened a defense otherwise available under the CUA (to possess and cultivate any amount of marijuana reasonably necessary for his or her current medical condition), the statute amended the CUA in violation of the state Constitution. The qualitative limitations of subdivision (a) of section 11362.77 continue to "have legal significance." (*Kelly, supra,* 47 Cal.4th at p. 1048.) The limitations operate to furnish a presumptive norm for ordinary medical use and establish a " 'safe harbor' " against prosecution. (*Kelly, supra,* at p. 1015, fn. 5.)

[4] For premises of 20 acres or less, no more than 12 mature marijuana plants or 24 immature marijuana plants are allowed. If there are both mature and immature plants, no more than 12 mature plants and 24 total plants are allowed. For premises greater than 20 acres but less than 160 acres, the allowable maximum is 30 mature marijuana plants or 60 immature plants. If there are both mature and immature plants, no more than 30 mature plants and 60 total plants are allowed. For premises of 160 acres or more, the limitation is no more than 99 marijuana plants, whether mature or immature. (TCC, § 9.06.040, subd. A.)

Anyone cultivating marijuana is required to register the premises with the Tehama County Health Services Agency, disclosing the name of each owner or lessee of the premises and of each qualified patient or primary caregiver participating in the cultivation, a copy of a current valid medical marijuana recommendation or state-issued medical marijuana card for each qualified patient, and the number of marijuana plants cultivated on the property. A fee for registration may be established. (TCC, § 9.06.040, subd. C.1.) If the person cultivating marijuana is not the owner of the premises, the Ordinance requires a notarized letter of consent from the owner. (TCC, § 9.06.040, subd. C.2.)

All outdoor marijuana grows must be enclosed by an opaque fence of at least six feet in height. (TCC, § 9.06.040, subd. C.3.) The Ordinance establishes setback requirements for each building or outdoor area where marijuana is grown.[5] Any failure to comply with the Ordinance is deemed a nuisance and subject to abatement. (TCC, § 9.06.050.)

### The Writ Petition

The petition sought a writ of mandate or an alternative writ of prohibition ordering the County to set aside the Ordinance.[6] Petitioners alleged they were qualified patients who under the Ordinance were unable to cultivate the amount of medicinal marijuana permitted under the MMP due to the size of their parcels or the number of qualified patients living on them. The petition alleged the Ordinance was unconstitutional because it limited the cultivation of marijuana for medical purposes to amounts less than those permitted by the CUA and the MMP; the Ordinance was "unconstitutional on its face, for reasons that the ordinance has burdened a qualified patient's right to cultivate marijuana for medical purposes under the [CUA]." The petition further alleged the Ordinance was unconstitutional because it imposed restrictions not found in the CUA or the MMP, violated a qualified patient's right to privacy, had findings not supported by "objective, empirical evidence," and was unreasonable.

---

[5] For premises of less than 20 acres, the setback requirement is 100 feet, unless the requirement was waived "based upon a finding of unusual hardship." (TCC, § 9.06.040, subd. C.4.a.) The setback requirement is 300 feet for premises of more than 20 acres but less than 160 acres, and 1,000 feet for premises of 160 acres or more. (TCC, § 9.06.040, subd. C.4.b., c.)

[6] "Although the . . . petition is denominated a petition for writ of 'Mandate/Prohibition,' prohibition lies only to restrain 'the proceedings of any tribunal, corporation, board, or person exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person.' (Code Civ. Proc., § 1102.) None of the named respondents exercises judicial functions in the enforcement of the ordinance. We consider the petition one for mandamus alone therefore. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1082, fn. 5 [40 Cal.Rptr.2d 402, 892 P.2d 1145] (*Tobe*) [petition seeking bar on enforcement of ordinance banning camping in public areas].)

The petition also sought a declaration that the Ordinance was unconstitutional, as well as costs and attorney fees.

The County demurred on the basis that the petition failed to state facts sufficient to constitute a cause of action. The County contended the Ordinance was not preempted by either the CUA or the MMP and rejected petitioners' "lesser arguments."

The trial court sustained the demurrer without leave to amend and entered a judgment of dismissal.

## DISCUSSION

## I

### *Facial Challenge*

■ As acknowledged by petitioners' briefing, the petition makes a facial challenge to the Ordinance. It repeatedly challenges the Ordinance as "unconstitutional on its face." Although the petition does later challenge the Ordinance "as applied" with respect to privacy rights and a vague reference to enforcement action, these points are not raised on appeal and are therefore forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].) Despite petitioners' detailing in sections of their petition as well as their statement of facts on appeal of the alleged effects of the Ordinance on certain individuals, they make no argument that challenges the Ordinance as unconstitutional as applied to these individuals. Thus only their facial challenge to the Ordinance is before us on appeal.

■ When considering a facial challenge to the constitutionality of an ordinance, we consider only "the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.] ' "To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' [Citation.]" (*Tobe, supra*, 9 Cal.4th at p. 1084.)

The precise standard governing facial challenges "has been the subject of controversy within this court." (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 502

[97 Cal.Rptr.2d 334, 2 P.3d 581].) "Under the strictest test, the statute must be upheld unless the party establishes the statute ' "inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions." ' [Citation.] Under the more lenient standard, a party must establish the statute conflicts with constitutional principles ' "in the generality or great majority of cases." ' [Citation.] Under either test, the plaintiff has a heavy burden to show the statute is unconstitutional in all or most cases, and ' "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute." ' [Citation.]" (*Coffman Specialties, Inc. v. Department of Transportation* (2009) 176 Cal.App.4th 1135, 1145 [98 Cal.Rptr.3d 643] (*Coffman Specialties, Inc.*) We need not resolve which test applies here because we find the result is the same under either.

II

*Petitioners' Contentions*

■ Petitioners first contend the Ordinance is unconstitutional because it is an unlawful amendment of the CUA. Under article II, section 10, subd. (c) of the California Constitution, the Legislature may amend an initiative statute only with the approval of the electors. Petitioners contend the Ordinance impermissibly amends the CUA without the consent of the electors.

■ Petitioners' initially overlook the fact that only the Legislature can amend a state statute; a county's board of supervisors has no such power, whether or not the statute was enacted by initiative. The proper analysis is whether the Ordinance is preempted by state law.[7] "Our state Constitution allows cities and counties to enact and enforce local ordinances so long as they are 'not in conflict' with the state's 'general laws.' (Cal. Const., art. XI, § 7.) Any conflicting ordinance is preempted by state law and thus void." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1065 [63 Cal.Rptr.3d 67, 162 P.3d 583].)

Petitioners next contend the Ordinance is unconstitutional because it conflicts with the MMP. They contend that section 11362.765, subdivision (a) preempts any nuisance action against the cultivation of medical marijuana. They further contend the Ordinance conflicts with the MMP because it limits the amount of medical marijuana that may be cultivated based on parcel size and requires a written recommendation or approval from a doctor.

■ Appellate courts have upheld local regulations pertaining to medical marijuana dispensaries, including temporary moratoriums, against challenges

---

[7] Petitioners reframe the issue as one of preemption in their reply brief.

that such regulations are preempted by state law. In *Kruse, supra,* 177 Cal.App.4th 1153, the court held Kruse's operation of a medical marijuana dispensary without the required business license was a nuisance per se that could be enjoined. (*Kruse, supra,* at pp. 1164–1166.) The court further held that a temporary moratorium on issuing licenses, permits, or variances for · medical marijuana dispensaries was not preempted by either the CUA or the MMP. (*Kruse,* at pp. 1171–1176.) In *Hill, supra,* 192 Cal.App.4th 861, the county ordinance required a conditional use permit and a business license for a medical marijuana dispensary. Further, there were restrictions, similar to those here, as to permissible locations for dispensaries. (*Hill, supra,* at p. 865.) The court found these restrictions were not inconsistent with state law. (*Id.* at pp. 867–869.)

Petitioners respond that *Kruse* is distinguishable because it involved dispensaries and a temporary moratorium, while here cultivation is at issue and, they contend, an outright ban is involved in certain situations. Further, they argue *Kruse* was wrongly decided and conflicts with California Supreme Court decisions.[8]

■ The MMP has been amended to permit some local regulation of dispensaries (see §§ 11362.768, subds. (b) & (g), 11362.83, subds. (a) & (b)). These amendments signal legislative approval of the decisions in *Kruse* and *Hill* and of local regulation of the use of medical marijuana.[9] There are no similar amendments expressly permitting local regulation of cultivation of medical marijuana, the subject of the Ordinance. We next consider whether the Ordinance is invalid because it conflicts with, and thus is preempted by, the CUA and the MMP. As we explain, we conclude that it is not.

III

*Preemption*

A. *The Law*

The question of whether state law preempts a local ordinance is "a pure question of law" we review de novo. (*City of Watsonville v. State Dept. of Health Services* (2005) 133 Cal.App.4th 875, 882 [35 Cal.Rptr.3d 216].)

---

[8] We note with disapproval that, despite the fact that the County relies heavily on *Hill*—and points out that petitioners' counsel here was also the appellants' counsel in *Hill*—petitioners completely ignore *Hill* in their briefing.

[9] This approval is explicit in the legislative history of Assembly Bill No. 1300 (2011–2012 Reg. Sess.). (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1300 (2011–2012 Reg. Sess.) as amended Mar. 31, 2011.) The County requests that we take judicial notice of this legislative history. We grant the request. (Evid. Code, § 452, subd. (c); *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 32–35 [34 Cal.Rptr.3d 520].)

■ "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) "The first step in a preemption analysis is to determine whether the local regulation explicitly conflicts with any provision of state law. [Citation.]" (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 291 [219 Cal.Rptr. 467, 707 P.2d 840].)

■ "Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]." (*Lancaster v. Municipal Court* (1972) 6 Cal.3d 805, 807–808 [100 Cal.Rptr. 609, 494 P.2d 681].) Local legislation is "duplicative" when it is coextensive of state law, and it is "contradictory" when it is inimical to state law. (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897–898 [16 Cal.Rptr.2d 215, 844 P.2d 534] (*Sherwin-Williams Co.*).) Local legislation enters an area " 'fully occupied' " by state law when the Legislature has either expressly or impliedly manifested its intent to fully occupy the area. (*Sherwin-Williams Co., supra*, 4 Cal.4th at p. 898.)

■ "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption. [Citation.]" (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821] (*Big Creek Lumber Co.*).) There is a particular reluctance to find preemption of a local regulation covering an area of significant local interest that differs from one locality to another, such as land use regulation. (*Big Creek Lumber Co., supra*, 38 Cal.4th at p. 1149.) "The presumption against preemption accords with our more general understanding that 'it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' [Citations.]" (*Big Creek Lumber Co., supra*, at pp. 1149–1150.)

### B. *Preemption by the CUA*

Petitioners contend the Ordinance fatally conflicts with the CUA. They contend the Ordinance places numerical limits on the amount of medical marijuana that a qualified patient may cultivate while the CUA does not. Further, they argue the Ordinance creates a complete ban on cultivating marijuana if (1) the qualified patient has only an oral, not a written, recommendation or approval from a physician; (2) the parcel is within 1,000 feet of a school or certain other properties or is too small to accommodate the setback requirements; and (3) the qualified patient is not the landowner and has not or cannot obtain a notarized consent from the owner of the property.

■ The fundamental flaw in petitioners' argument is their misplaced view that the CUA somehow creates or grants unrestricted rights. Petitioners suggest the CUA grants every qualified patient "the right to cultivate their marijuana for medical use within the sanctity of their home." Similarly, the petition alleged state law "permits the cultivation of marijuana plants at any privately owned residence or location." But the CUA does not create any such right; it only provides a limited defense to certain crimes, "not a constitutional right to obtain marijuana." (*Urziceanu, supra*, 132 Cal.App.4th at p. 774.) The only "right" created by the CUA is the right of a qualified patient or his primary caregiver to possess or cultivate marijuana for personal medical purposes, upon recommendation or approval of a physician, without becoming subject to criminal punishment under sections 11357 and 11358. (*Ross, supra*, 42 Cal.4th at p. 929.) The CUA did not create "a broad right to use marijuana without hindrance or inconvenience." (*Ross, supra*, at p. 928.) Since the CUA does not create a right to cultivate medical marijuana, restrictions on such cultivation do not conflict with the CUA.

The CUA does not expressly preempt the regulation of cultivation amounts and location of medical marijuana on particular parcels of property. First, the CUA does not address zoning and its plain language does not prohibit the enforcement of zoning requirements. (*Kruse, supra*, 177 Cal.App.4th at p. 1172.) Second, the CUA *does* expressly permit laws to prohibit conduct that endangers others. (§ 11362.5, subd. (b)(2).) Here, the Ordinance states that regulating the cultivation of medical marijuana is necessary "in order to protect the public health, safety and welfare in Tehama County." (TCC, § 9.06.020, subd. (J).) The Ordinance cites the risks of "criminal activity, degradation of the natural environment, malodorous smells, and indoor electrical fire hazards."[10] (TCC, § 9.06.020, subd. (G).)

Petitioners contend the ballot arguments for and against Proposition 215, the CUA, indicate the electorate did not intend to allow any regulations on the cultivation of marijuana for medical purposes. The opponents argued the proposition allowed "unlimited quantities of marijuana to be grown anywhere . . . in backyards or near schoolyards without any regulation or restrictions." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) argument against Prop. 215, p. 61.) The supporters responded, "Proposition 215 does not allow 'unlimited quantities of marijuana to be grown anywhere.' It only allows marijuana to be grown for a patient's personal use." (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument against Prop. 215, p. 61.) Petitioners reason

---

[10] In their reply brief, petitioners challenge for the first time the validity of these findings. "Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument." (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432].) Because petitioners have not shown good cause to depart from our usual rule, we decline to consider their late challenge.

that based on these arguments the voters understood that the only regulation on cultivating marijuana was that it be for a patient's personal medical use.

■ We reject this argument. Courts consider ballot summaries and arguments to determine the voters' intent only where the language of the initiative is ambiguous. (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 [107 Cal.Rptr.3d 265, 227 P.3d 858].) As we have discussed, courts have rejected petitioners' argument that the CUA granted a broad right to cultivate and use marijuana for medical purposes based on the language of the CUA. (*Ross, supra*, 42 Cal.4th at p. 928; *Urziceanu, supra*, 132 Cal.App.4th at p. 774.)

■ "[A] local ordinance is not impliedly preempted by conflict with state law unless it 'mandate[s] what state law expressly forbids, [or] forbid[s] what state law expressly mandates.' [Citation.] That is because, when a local ordinance 'does not prohibit what the statute commands or command what it prohibits,' the ordinance is not 'inimical to' the statute. [Citation.]" (*Big Creek Lumber Co., supra*, 38 Cal.4th at p. 1161.)

It is by no means clear that the CUA *commands* that counties permit the cultivation of marijuana for medicinal purposes. We express no opinion as to whether a local ban on cultivating medical marijuana is preempted by state law. The Ordinance is clearly not a ban.[11]

Simply put, the Ordinance does not prohibit the cultivation of medical marijuana by qualified patients. It merely regulates and restricts locations of grows and amounts that may be grown on particular parcels. Courts have routinely upheld this type of regulation of the location and conduct of agricultural activities. (See, e.g., *In re Application of Mathews* (1923) 191 Cal. 35, 38–39 [214 P. 981] [upholding nuisance ordinance restricting the keeping of goats near residences]; *Boyd v. Sierra Madre* (1919) 41 Cal.App. 520, 524 [183 P. 230] [upholding ordinance prohibiting livery stable or corral for horses, mules, jennies, jacks, or burros within city]; *Finstein v. County of San Bernardino* (1957) 147 Cal.App.2d 549 [305 P.2d 266] [upholding ordinance prohibiting the keeping of animals or fowl within 40 feet of any church, hospital, public place, business, or residence]; *In re Application of Ellis* (1938) 11 Cal.2d 571 [81 P.2d 911] [upholding ordinance prohibiting beekeeping within city].)

---

[11] Petitioners rely on *Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 105 [223 Cal.Rptr. 609], where the appellate court held an ordinance banning electroconvulsive therapy (ECT) was preempted by state law that extensively regulated the use of ECT and made it available to psychiatric patients. Because here there is no outright ban, the case is inapposite.

Petitioners repeatedly characterize the ordinance as a complete ban on the cultivation of medical marijuana. This characterization is simply false. The Ordinance has limits of 12 to 99 mature plants per parcel. Certainly, in many instances, under the Ordinance a qualified patient could cultivate sufficient medical marijuana to meet his medical needs, even on a single parcel.[12]

Although in certain instances the Ordinance may prohibit a qualified patient from cultivating as much medical marijuana as he or she may wish to grow on a particular parcel, as we have discussed *ante*, here petitioners have made only a facial challenge to the Ordinance.[13] We review "only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.]" (*Tobe, supra*, 9 Cal.4th at p. 1084.)

Nor do the requirements of a physician's written approval or recommendation and the notarized consent of the landowner conflict with the CUA. The immunity from criminal prosecution granted by the CUA is not burdened by either of these requirements; the CUA's defense to criminal charges may still be available in a given case even if the qualified patient has fulfilled neither requirement.

Petitioners have failed to establish that the Ordinance's partial prohibition constitutes a total ban on cultivating medical marijuana that is in conflict with the CUA. They have not shown that cultivating medical marijuana in Tehama County is prohibited "in all or most cases," their "heavy burden" in a facial challenge to the Ordinance. (*Coffman Specialties, Inc., supra*, 176 Cal.App.4th at p. 1145.)

## C. Preemption by the MMP

### 1. General Inconsistency

Section 11362.83 allows cities or other local governing bodies to enact laws that are consistent with the MMP.[14] Petitioners contend the

---

[12] Petitioners contend that cultivation is prohibited on all parcels that are less than 200 feet wide due to the 100-foot setback requirement for parcels of 20 acres or less. They ignore that this setback requirement is not absolute; it may be reduced or waived "upon a finding of unusual hardship." (TCC, § 9.06.040, subd. C.4.a.)

[13] The petition alleges certain petitioners "have lost his/their right" to cultivate medical marijuana. It does not allege that all or most qualified patients in Tehama County have "lost their right" to cultivate medical marijuana because the conditions of the Ordinance are so onerous as to prevent the cultivation of medical marijuana by nearly everyone in the county.

[14] Petitioners argue the Ordinance touches upon a matter of statewide concern that is important. To the extent they are arguing that the MMP preempts local regulation by occupying this area of law, that argument is refuted by section 11362.83, which expressly permits local regulation. "Preemption by implication of legislative intent may not be found when the

restrictions of the Ordinance—particularly the limits on the amount of medical marijuana that may be cultivated based on parcel size and the requirement of a physician's written approval or recommendation—are not consistent with the MMP.

Petitioners' argument was recently rejected in *Hill*. "Defendants interpret the word 'consistent' as used in section 11362.83 to mean 'the same as.' Thus, they contend, the County can only enact the same limitations as provided in the Medical Marijuana Program; the County's greater restrictions, including zoning and licensing requirements, are therefore prohibited. But by saying '[n]othing in this article shall prevent a city or other local governing body from adopting and enforcing laws consistent with this article,' the Legislature showed it expected and intended that local governments adopt additional ordinances. To hold otherwise would be to attribute to the Legislature the sanctioning of useless and redundant acts by local governments." (*Hill, supra,* 192 Cal.App.4th at pp. 867–868.) As noted earlier, petitioners make no mention of *Hill*, let alone attempt to distinguish it.

Petitioners assert an Attorney General opinion regarding the preemption of the MMP over local legislation "merits serious consideration." That opinion states, "a city program that defined 'attending physician' and 'primary caregiver' more narrowly than state law would be preempted to the extent it prohibited what state law expressly permitted." (88 Ops.Cal.Atty.Gen. 113, 118 (2005).) We find this opinion inapplicable. It answered questions regarding a city's ability to adopt its own registry and identification program, "a narrower, more specific field of regulation" that the Legislature intended to fully occupy by the MMP. (88 Ops.Cal.Atty.Gen., *supra,* at p. 116.) In contrast, the Attorney General found "the Legislature expressly did not intend to 'fully occupy' all areas of law concerning the use of medical marijuana . . . ." (*Ibid.*) Since we are not concerned with the registry and identification card aspect of the MMP, the Attorney General opinion does not support a finding of preemption.

### 2. *Nuisance Actions*

The Ordinance declares that any cultivation of marijuana not in accordance with its provisions is a nuisance that may be abated. (TCC, § 9.06.040.) Petitioners contend the MMP preempts the County from using nuisance abatement law to prohibit the use of property for medical marijuana purposes.

Petitioners' argument is based on sections 11362.765 and 11362.775. Section 11362.765 provides that qualified patients and their primary caregivers "shall not be subject, on that sole basis, to criminal liability" under

Legislature has expressed its intent to permit local regulations." (*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150].)

various statutes, including section 11570. Section 11362.775 provides immunity from "criminal sanctions" under the same statutes, including section 11570, for those "who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes."

Section 11570, the so-called "drug den" abatement law, provides: "Every building or place used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance, precursor, or analog specified in this division, and every building or place wherein or upon which those acts take place, is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance."

Sections 11362.765 and 11362.775 speak of immunity from "criminal liability" and "criminal sanctions." Although section 11570 provides only civil remedies, such as an injunction and damages, "it is widely recognized as quasi-criminal in nature. [Citations.]" (*Hill, supra,* 192 Cal.App.4th at p. 869, fn. 5.) Given the quasi-criminal nature of section 11570 and its inclusion in sections 11362.765 and 11362.775 with other provisions of the Health and Safety Code that define crimes, we conclude the immunity of sections 11362.765 and 11362.775 applies to the civil remedies of section 11570. Otherwise, its inclusion would be mere surplusage, a result we must avoid. " 'A construction making some words surplusage is to be avoided.' " (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 [105 Cal.Rptr.3d 404, 225 P.3d 538].)

The limited statutory immunity from prosecution under section 11570, however, does not prevent application of the nuisance provisions of the Ordinance. The limited immunity applies only to a nuisance action based *solely* on the doing of the act that the Legislature has immunized. Neither immunity statute precludes a local governing body from restricting or regulating the activity and declaring a nuisance if the activity is not conducted in conformity with the restriction or regulation.

Section 11362.765 provides immunity from the "drug den" abatement law to qualified patients and others who transport, process, administer, deliver, give away, or acquire skills necessary to cultivate or administer marijuana for medical purposes *"on that sole basis."* (§ 11362.765, subds. (a) & (b), italics added.) The Ordinance does not declare that every building in which the acts identified in section 11362.765 occur is a nuisance per se. Instead, such properties are nuisances only if the cultivation of marijuana is not conducted in accordance with the conditions of the Ordinance. It is the manner and location of cultivation that make the activity a nuisance, not solely the act of cultivating marijuana for medical purposes. Since the

Ordinance's declaration of nuisance is not on the "sole basis" of cultivating medical marijuana, the Ordinance does not conflict with section 11362.765.

 Section 11362.775 exempts qualified patients and their primary caregivers from the nuisance law of section 11570 *"solely on the basis"* of the fact they have associated collectively or cooperatively to cultivate marijuana for medical purposes. (Italics added.) For the same reasons as stated *ante*, the Ordinance does not declare a nuisance *solely* because persons have associated to cultivate medical marijuana. "The statute does not confer on qualified patients and their caregivers the unfettered right to cultivate or dispense marijuana anywhere they choose. The County's constitutional authority to regulate the particular manner and location [of cultivation of certain plants] (Cal. Const., art. XI, § 7) is unaffected by section 11362.775." (*Hill, supra,* 192 Cal.App.4th at p. 869.)

Petitioners contend the nuisance provisions of the Ordinance are barred by Civil Code section 3482.[15] Civil Code section 3482 provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Again, petitioners' argument is premised on the erroneous assertion that the MMP, as well as the CUA, gives express authority to cultivate marijuana for medical purposes without restriction or regulation. Because petitioners' premise is without foundation, their argument collapses.

### D. *Local Criminal Sanctions*

Petitioners contend that the Ordinance subjects them to possible criminal sanctions under the TCC in violation of the immunity provisions of the MMP, as well as the CUA. Under TCC section 10.14.060, subdivision A, "Notwithstanding any provision of this code to the contrary in Titles 9, 15 and 17, whenever any provision in any of said titles provides that any act is prohibited, or made or declared to be unlawful or a misdemeanor or an infraction," the violation of such provision shall be charged as an infraction and, after three or more convictions, may be charged as a misdemeanor. The Ordinance declares that the cultivation of marijuana not in accordance with its provisions is "unlawful and a public nuisance." (TCC, § 9.06.040, subd. A.)

 This contention is forfeited because petitioners failed to challenge the Ordinance on this basis in their petition. (*Baychester Shopping Center,*

---

[15] Petitioners also quote from language in *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 754 [115 Cal.Rptr.3d 89] (*Qualified Patients*), when arguing that local nuisance abatement ordinances are preempted by state law. However, in that case the appellate court expressly declined to decide the preemption issue. (*Qualified Patients, supra,* 187 Cal.App.4th at p. 755.) Accordingly, we disregard the quoted language.

*Inc. v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2008) 165 Cal.App.4th 1000, 1007–1008 [81 Cal.Rptr.3d 341] [appellate due process challenge to rent control ordinance forfeited because it was not raised at trial level].) Moreover, they fail to raise it properly on appeal; it is never presented in the argument section of either the opening or reply brief, nor does it have a proper heading. (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4 [41 Cal.Rptr.2d 263] [the appellant must present each point separately in the opening brief under an appropriate heading or it is forfeited]; Cal. Rules of Court, rule 8.204(a)(1)(B).)

## DISPOSITION

The judgment is affirmed. The County shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Butz, Acting P. J., and Mauro, J., concurred.